Good afternoon, Your Honors. My name is Malvina Nathanson. I represent Perry Griggs. The underlying criminal case is basically a he said, she said. She said that Griggs had a gun the night before. He said no, or he said that the gun came during the course of this melee between him and his drug contacts. And so anything that goes to the credibility of either side is going to be critical because that's what the case boils down to. Who are you going to believe? And permeating this entire record are improper evidence, improper arguments that go to that very question. And pretty much the district court and even the appellate division and even occasionally the appellee agree that there were things that should not have come into evidence and that there were statements that shouldn't have been made. And a lot of this boils down to harmless error. That in fact there was a fair trial. The errors did not deny Griggs a fair trial or the trial attorney for not having objected to the errors in summation was not ineffective because the defendant wasn't hurt by them. So I think it's important to understand exactly how the facts play into this. The kinds of the evidence that comes in about Mr. Griggs is evidence that he is a, he beat his partner, he hit her with a gun, he was committed. I don't remember an allegation that he hit her with a gun. I'm sorry. Actually, you're right. That didn't come into evidence. He's the one, he said that he was hit with a gun. That's what, and I am, and I've just merged two points because that's what the DA said in summation, that the testimony was that he hit her with a gun. And that was one of the false statements that the DA made in summation about what the evidence was. So I, in terms of the evidence, I withdraw that, Judge. You're absolutely right. I, you know, I read the, the, both summations over the weekend again, and I don't remember seeing that the prosecutor said that, but maybe I'm mistaken. So. Did he refer to her as a domestic violence victim? He referred to her as a domestic violence victim for whom he. Yes, that, that he did. Yes. In summation. I'm sorry, and I'm going to. Well, don't, we can look it up. Don't, don't waste your time now because you only have a limited amount of it. Okay. So, sorry, I just got thrown off. Let me, let me go back. The, the, whether or not Mr. Griggs is to be believed is absolutely essential. And painting him in that way is going to inevitably is going to make the jury not think very well of him. He's a, he's a wife beater, he's a partner beater, and he's a, a thief. And so it, in fact, by letting this evidence in in the first place. But at least the incident the day before, doesn't that have to come in? Well, I didn't say have to, but isn't it well within a court's discretion to let that in? Well, not just that he was in possession of the gun, but why the gun was shown to her. It's a rather strange, so you think it would be, you don't think it would be strange for the jury to hear, he showed me the gun. End of story. No further comment. I saw a gun in his possession. No explanation of why, how, where. There is no, we have made no objection to the fact that she testified that he threatened her with the gun and said if you leave me, I'll shoot you. We haven't objected to that. And that's the story with the possession of a gun. The fact that. And you think that if, if the jury heard that he hit her, as opposed to just merely that he threatened her, threatened to kill her if she left and waved a gun at her, that that's what prejudiced the jury against him, not the fact that he's waving a gun at this woman? That's, that's part of the whole mix. That has to do with his credibility. Her credibility, especially with respect to the possession of a gun, is extremely questionable. She claims that he pointed this gun at her and threatened her, and yet the next day she goes out with him. They go shopping. He takes her to the hospital. He takes her to the hospital again. She claims that she told her grandmother that he had this gun, but nobody seemed to care about it. He testifies that he told, she testifies that she told the people that she worked with about the gun. You've never heard of a domestic violence victim continuing to consort with the person who victimized her? I am absolutely not saying that she had to be disbelieved and he had to be the main judge. What I'm saying is that in terms of the jury weighing the evidence, they had evidence to weigh on each side, and that the, the weighing was tipped by the fact that other stuff came in about him that shouldn't have come in that, that made his credibility questionable for reasons that it shouldn't have been made questionable. So it's a question of how the jury is going to weigh the respective credibility. And of which Supreme Court decision is the decision of the New York State courts a manifest misinterpretation? It's fair trial. I mean, the test is a very general one. It's a question about whether or not there are fundamental conceptions of justice that are violated. And, and it is our argument that it is unjust for somebody to be convicted not for what they did, but for who they are. And if there's a possibility that that happened, if that's the way the evidence came down. And I should add that the, that the prosecutor made use of that evidence and then built on it in summation so that it, it magnifies the unfairness to the defendant. Not only did he talk about her being a victim and about, and then he talks about her being beaten, which is, is not supported by the evidence. He talks about the fact that the. If, if you say it's no problem that he introduced that she was threatened with a gun and told that she would be shot if she ever left him. Isn't it a fair comment that she's a domestic violence victim? I mean, isn't that domestic violence? The, the, the question is the context and in the context of, of that and the other remarks he made, he was saying, feel sorry for her. And I don't know if, if her being a domestic violence victim is in fact a fair consideration for the jury. What she, what he did, absolutely. The fact that she's a domestic violence victim, it's, that's a, that's a matter of sympathy. That's just saying, please feel sorry for her. She's a domestic violence victim. And domestic violence victims don't always tell the truth either. So, so it does, it's not relevant to the, to what the jury was supposed to be considering. And so when, when the district attorney builds on this in summation, then, then Mr. Griggs is in danger of being convicted because of the kind of person he is. And that is unjust. And that I think satisfies the Supreme Court test. Thank you, Ms. Nathanson. I've given you some, a little bit of extra time, but you will have some more time on rebuttal. Good afternoon, Your Honors. David Harady of the Erie County District Attorney's Office on behalf of the respondent. The petitioner here was convicted after a fair trial on overwhelming evidence of possessing a loaded firearm. None of the errors alleged by the petitioner rise to the standard for habeas relief. With respect to the admission of the petitioner's prior bad acts, this is a state law evidentiary issue. It does not come close to the extraordinary level of a due process violation. There was relevance to the testimony from the, from the defendant, petitioner's girlfriend the night before that she saw him with, with the gun that was fatal to his temporary and lawful possession of a weapon defense. The appellate division found that the, overall that the prior bad acts evidence was more prejudicial, prejudicial than prohibitive. But even if they went too far, that's a state law issue. And in the context of the, excuse me, of the overwhelming evidence of the petitioner's guilt, even absent the prior bad acts evidence, to wit, the fact that he placed, I would say hid the gun underneath the fence, didn't tell the police about it until he heard them talking about it, his, as the appellate division found, his temporary and lawful possession defense was simply not viable. The prior bad acts evidence, even to the extent they may have been improperly admitted, was insignificant in the context of the entire trial. Can you help me try to understand a few things here? Yes, Your Honor. And just confirm what I take to be evident in the record. Yes. Defense counsel was accused of talking out of both sides of their mouth, right? Yes, Your Honor. And there was a reference to defense counsel being engaged in spin, right? Yes, Your Honor. The petitioner was said to have hit his girlfriend with a gun, correct? Yes, Your Honor. None of the police officers who testified ever explicitly said that the gun was hidden. Nobody suggested that the gun was hidden, right? They didn't use that word exactly, Your Honor. They did say one of them said it looked like it had been placed there deliberately, but it was underneath the fence. No, that word was not used. But so given all of these, you would admit these were all errors of some kind, of one sort or another? Your Honor, I would concede that when the prosecutor said that the petitioner hit her with a gun, hit Javon Young's girlfriend with a gun, that that was improper because it was a misstatement of the evidence. In reality, she said that he hit her and that he threatened her with a gun. He just conflated the two. I would say that so, yes, I have to concede that that's error because accuracy is important. I would submit that there is no prejudice. And there was a reference to the petitioner's silence at trial, right? No, Your Honor. There was no ‑‑ the petitioner testified before the grand jury. That testimony was admitted at trial. The prosecutor was not commenting on the petitioner's silence at trial. He was commenting on omissions in the narrative that the petitioner gave, which he is permitted to do because ‑‑ That he gave before the grand jury? Yes, Your Honor. Yes. I think that the ‑‑ his comment should not be construed as comment on the petitioner's failure to testify, but rather a fair comment on the ‑‑ on what was in evidence. The ‑‑ it is a fair comment and a fair inference from the evidence that the petitioner hit the gun in the full context of the evidence. He runs into this yard. The gun is found here placed underneath the fence. He didn't tell the police about it, even though he ‑‑ and that is one of the factors that the court must consider in the temporary and lawful possession of defense. It's not a fair comment, is it, to say that a defense lawyer, you know, I was having a casual conversation with one of my colleagues at the defense bar, and he told me that basically, you know, my approach is to try to destroy the government's case, but if I can't do that, I'll just distract them, and that's what my job is, is to distract from the evidence? Your Honor, I think he certainly would have been better off not referencing the fact that he had spoken with another defense lawyer. Oh, he could have just said, it's my view that that's what defense lawyers do? Well, no. You know, you're here on behalf of that office. Is there any instruction given to prosecutors that they're not supposed to disparage the role of defense counsel in this broad brush of fashion? Yes, Your Honor, there certainly is. I certainly would hope so. Yes, and I agree that that comment should not have been made in that way. What he was within his rights to do was focus the jury's attention on the evidence because defense counsel Summation was extremely aggressive. He attacked the testimony of both the police officers and the petitioner's girlfriend, and there was he asserted that the petitioner's story about him disarming a carjacker was probably what happened, which I think if you look at the record, that is an extremely dubious proposition. So the prosecutor was trying to focus the jury's attention on the evidence. The way he did it was not ideal, I would agree, but it goes back to the fact, I think, that in the context, the entire summation, the inspection as a whole was a fair response to the defense summation with a few, with a few. At least one thing seemed to me to be sort of a fair response, and to the extent there's any argument that the prosecutor was vouching for the witnesses, the defense summation specifically accused the prosecutor by name as not believing in his case, and that's why he didn't believe the witness and that's why he made a, had some DNA testing done, which I thought was a pretty extraordinary thing to say and may have justified things that wouldn't otherwise be justified by way of vouching. But both sides had their summation issues. Both sides did have their summation issues. Judge Lynch, I agree. But I think the defense summation was much, much more egregious. I don't have a much more, let's not go too far, but it had at least one egregious flagrant foul in it, and so did the prosecutors. Yes, Your Honor. Yeah, the vouching for the witnesses, yeah, he, he, he, he. I don't, yeah, I didn't think that, Ms. Nathanson didn't even raise that one. Right. Here, anyway. And the prior bad acts. Yes, Your Honor. What were those? The prior bad acts included the, well, from the testimony of Jevon Young, it was the, everything that had happened the night before, her observation of the gun, threatening her with the gun. There was also the issue of the defendant stealing her debit card, which, you know, the Fourth Department found should not have come in. And then there was some stuff that came in, some evidence that came in through the petitioner's testimony about his drug activity. Actually, they both testified to that drug activity. Yeah, of course, the whole, the whole theory of the defense was, first of all, that it was a drug deal that he was going there to do. Right. And secondly, that he was an ex-convict, and that's why he was worried about having even temporary possession of the gun, even innocently, because he thought the police would then hold that against him and arrest him. So it's not as if his character, such as it was, was not before the jury for a whole host of reasons having nothing to do with any specific theft or whatever. That's right. I agree. The nature of his defense brought in many of these issues, and there was, again, it was highly relevant to the defense that he chose to put forward, that he possessed the gun the night before. So especially in the context, this is a state law evidentiary ruling, obviously there was much relevance in many of these prior bad acts, even if there was error. It's a state law error, as the appellate division determined. It does not come close to the extraordinary standard of a due process violation. That's a lot of different errors, right? I don't know if I'd say a lot, Your Honor. I think there was certainly a lot of prior bad acts evidence, but only a small number, I would say, that were in error. The debit card, for example, maybe that shouldn't have come in. But most of them, I think, were relevant, highly relevant. They were prejudicial, too, but all relevant evidence is prejudicial, too, to some degree. And, again, this is in the context of the entire trial. These were remote issues, like the debit card issue didn't really bear on the questions the jury had to decide. To the extent that it made him look like a bad guy, the evidence that was properly before the jury already did that to a much greater degree. So I don't like relying on harmless error necessarily, completely, but to the extent that there was individual acts that should not have been admitted, it was harmless. What do you make of the Fourth Department's decision that the prior bad acts were unrelated to the underlying charge? Some of them were. Again, the debit card issue was. That was unrelated to the prior bad acts. It was essentially the narrative of Jevon Young, and she just kind of said all these things. Most were relevant, and then she included that issue. And so that's why they found it more prejudicial than probative, because at least that part of it was not probative at all. But I think the prejudicial effect of something like that is minimized by the fact that it was really insignificant to the issues before the jury. And, again, the evidence they already had properly before them reflected his character to such a degree that that probably wouldn't have made much of a difference. Thanks very much. We'll hear from Ms. Nathanson. Thank you very much, Your Honor. Let's reserve some time. Thank you. Transcript page 668 is where the district attorney says he hit me with a gun. I'm sorry that I didn't have that before. I just wanted to underline two more things in the summation that was discussed that I didn't get to in the opening. One more thing that I think is really critical, and that's the misstatement about the police testimony that he hid the gun. It was the police who found the gun. And so their explanation of what they saw when they found it would be very, very critical. And the reason this is so bad is that, in fact, if you believe Mr. Griggs, as I think you almost have to, that there was this melee. I mean, there was a witness to it, and he got beaten by these people and they took his pants. And then you may even believe that that's where he got the gun. According to the district attorney's argument and according to the appellate division, if he did not tell the police about the gun but instead hid it, then he was clearly not the defense of temporary incident possession wasn't available to him. And, in fact, the jury was told that that was one of the elements that it should consider in deciding whether or not the temporary innocent possession defense was available. So. Kennedy, was there an objection interposed to the statement that he hit her with a gun? That the gun was hidden? That's why the defense lawyer was ineffective, and that's why the actual argument is ineffective assistance of counsel for failing to object to that and everything else in the summation that should not have been said. Did the judge in general at least tell the jury that what mattered was the actual evidence, not the characterizations by the lawyers? Yes, he did. And I think this Court did. But he didn't, and he or she, she didn't have the occasion to interject at that particular moment unless the judge specifically remembered the colloquy about hidden on cross examination. Because no one said, you know, okay. I'm not faulting the judge. Right. It's the defense counsel. Because it was defense counsel's business to pay attention to what was going on. And so that was a particularly prejudicial statement. And just to say a moment about the prejudice involved in the ineffective assistance of counsel claim, a jury without that argumentation, without that misunderstanding about whether the gun had been hidden or not, without having heard from the prosecutor that the defendant had gone to this drug transaction in order to rob people, which implies that he was carrying a weapon. But that was the prosecutor's theory, and that was rooted in the statement. It's a stretch. It's an inference. But the defendant's girlfriend said something about he was going to go and flash the money and then do what he had to do. Well, that's a real stretch. So when you take the combination of all of those. And the same as far as the hidden. The actual testimony of the officer was that the gun was placed in a particular place where it could be found again, where there was a landmark, and was not tossed into the. No. Sorry. That is not what the. That is what the prosecutor said. He said it was police officer's conclusion that it's sufficiently hidden but yet could be recovered if Griggs wanted to. That was the summation statement. The hidden part is what was specifically denied, as I recall it, by the officer, that he said no, he wouldn't say it was hidden. But the officer, I thought, did say that it had, it was placed in a particular place as opposed to it just landed in the woods. No. He said place. He doesn't know. I mean, placed, you really have to be present to see if someone places it or drops it or, I mean, placed is a pretty special thing. It's the hidden part that's. But wasn't the officer saying that it was near a fence post or there was some testimony about it being, I thought the officer even gave sort of opinion testimony, which may or may not have been right or permissible as to the specific location in which it was. But the question is not the location. The question is did, was it hidden? And the officer explicitly said it was not hidden. It was not hidden. Thank you. Thank you. Thank you. We'll reserve the decision. We appreciate your argument.